UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

PUERTO RICO TELEPHONE COMPANY, INC.,

    Plaintiff,

v.

TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO, et. al.,

    Defendants.

Civil No. 12-1893 (JAF)

## **OPINION AND ORDER**

We must decide, among other issues, whether the Telecommunications Regulatory Board of Puerto Rico wrongly interpreted federal regulations when it authorized an interconnection agreement between two competitive local telephone exchange carriers.

### **I.**

### **Background**

Because we must view all facts in the light most favorable to the non-moving party when considering a summary judgment motion, to the extent that any facts are disputed the facts set forth below represent the plaintiff's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where the plaintiff's asserted facts do not properly comply with Local Rules 56(c) and (e), we deem the defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly).

This case arises out of a dispute between two local exchange carriers with operations in Puerto Rico: Puerto Rico Telephone Company, the incumbent local exchange carrier, and Liberty Cablevision of Puerto Rico, LLC, a certified competitive local exchange carrier.

On April 2, 2012, Liberty petitioned the Telecommunications Regulatory Board of Puerto Rico for the arbitration of twenty-seven open issues remaining in its negotiations for an interconnection agreement with Puerto Rico Telephone.

Puerto Rico Telephone did not file a response to Liberty's petition for arbitration. Instead, Puerto Rico Telephone filed two separate motions to dismiss. Puerto Rico Telephone's first motion to dismiss was based on the contention that Liberty is not entitled to interconnection under 47 U.S.C. § 251(c). The Board denied the motion, but held that it would reconsider the issue when the facts were fully developed at a hearing. After a full hearing, the Board held that Liberty had the legal right to seek interconnection under § 251(c)

Puerto Rico Telephone's second motion to dismiss argued that the proposed merger between OneLink Communications and Liberty undermined any potential arbitration process and that the Board should dismiss Liberty's petition for arbitration as untimely. The Board denied Puerto Rico Telephone's motion.

After negotiations resumed, the parties presented the Board with four issues for resolution. The Board appointed a Hearing Examiner for the arbitration. The Hearing Examiner, subject to the Board's oversight and approval, supervised discovery and conducted a two-day hearing in San Juan, Puerto Rico, on August 13-14, 2012. Seven witnesses testified at the hearing. Prior to the hearing, the parties submitted direct and reply testimony and related exhibits. The parties also filed pre-hearing briefs, made opening statements and closing arguments, and filed post-hearing briefs, including reply briefs. Those

documents, all discovery-related motions/orders, evidentiary motions/orders, and the transcripts of the hearing and closing arguments, constitute the official record.

On September 25, 2012, the Board issued the <u>Report and Order</u> that resolved all of the outstanding issues. On October 25, 2012, Puerto Rico Telephone and Liberty filed the completed interconnection agreement with the Board, which was approved by operation of law on November 25, 2013. Neither party sought reconsideration. On October 25, 2012, Puerto Rico Telephone filed suit.

Puerto Rico Telephone challenges five of the Board's conclusions: (1) after Liberty's purchase of OneLink, Liberty ceased existing as a corporate entity, and there was no information in the arbitration record about the new entity's capacities to offer or provide telecommunications services; (2) because Liberty was historically a cable provider, and the FCC has never extended rights under § 251(c) to cable providers, it was error for the Board to hold that Liberty is entitled to the rights available under § 251(c) of the Act; (3) the Board erred by holding that, under Commonwealth Law 213, Puerto Rico Telephone must offer to Liberty the same facility construction Puerto Rico Telephone offers to its retail customers; (4) the Board erred in adopting performance intervals that were not offered by either party; and (5) when the Board adopted a dispute resolution provision in the event discussions between Puerto Rico Telephone and Liberty over IP-to-IP interconnection break down, this was error because the FCC has not permitted states to regulate IP-to-IP interconnection.

The Board moved for summary judgment. (Docket Nos. 15, 31.) Puerto Rico Telephone moved for judgment on the pleadings. (Docket No. 23.)

## II.

### Legal Standard

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. <u>Celotex Corp. v.</u>

Case 3:12-cv-01893-JAF   Document 57   Filed 03/31/14   Page 4 of 11
Civil No. 12-1893 (JAF)                                                                                      -4-

Catrett, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable juror could find for plaintiffs on each of their claims when all reasonable inferences from the evidence are drawn in their favor.  See Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.

### Standard of Review

We review de novo a state agency determination based on federal law.  Global NAPs, Inc. v. Verizon New Eng., Inc., 396 F.3d 16, 23 (1st Cir.2005); see also id. at 23 n.7 (declining to apply deferential review to state agency's determination under the TCA). Where the state agency determination is based on state law, we review same with due deference to the agency's superior knowledge of its governing statute.  See WorldNet Telecomms., Inc. v. P.R. Tel. Co., 497 F.3d 1, 11 (1st Cir.2007) ("Although the Board's authority under local law is a legal issue, it is customary where any doubt exists to give some deference to the agency charged with administering the statute.").

Where no error of law is alleged, we review a state agency's determination under the arbitrary and capricious standard.  See Global NAPs, 396 F.3d at 23 n.7.  An agency's determination is deemed arbitrary and capricious where the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

### IV.

### Discussion

Should the Board have stayed or terminated the interconnection arbitration until the conclusion of the Liberty-OneLink merger?  No.  Puerto Rico Telephone fails to identify

how the Board violated 47 U.S.C. § 251(c) by issuing the <u>Report and Order</u> while the Liberty-OneLink merger was under review.

§ 251(c) does not require the cancelation of a pending interconnection agreement if a telecommunications carrier merges or is acquired. In fact, § 251(c) is silent regarding whether a competitive provider that is party to an interconnection agreement may be acquired or by whom. Moreover, nothing in the text of § 251(c) would absolve the Board from its duty under § 252(b)(4)(C) to conclude the resolution of any open issues presented in a petition for arbitration simply because the petitioner is involved in a pending reorganization or merger.

Puerto Rico Telephone argues that by issuing the <u>Report and Order</u> while the Liberty-OneLink merger was under review, the Board granted interconnection rights to OneLink—an entity that was not a party to the arbitration, or eligible for interconnection. This might be true enough if Puerto Rico Telephone's characterization of the Liberty-OneLink merger was accurate. Liberty's parent corporation, LGI Broadband, acquired OneLink not, as Puerto Rico Telephone asserts, the other way around. Liberty and OneLink then merged to form an entity also named Liberty. Consolidation of ownership was followed quickly by the absorption of the new Liberty into LGI Broadband's management structure. Indeed, on September 12, 2012, Liberty sought approval to transfer its local exchange carrier certificate to the new post-merger entity—in essence, swapping the name "Liberty" for "Liberty II."

Similarly, Puerto Rico Telephone claims that the Liberty-OneLink merger resulted in the assignation of Liberty's rights under the interconnection agreement to a subsidiary of OneLink. But, here again Puerto Rico Telephone's characterization fails to correspond with the record. The Board noted that any interconnection agreement between Liberty and Puerto Rico Telephone in effect at the time of the Liberty-OneLink merger would become binding

Civil No. 12-1893 (JAF)                                                                                                              -6-

upon any subsequent entity formed out of the merger. Puerto Rico Telephone confuses language in the interconnection agreement prohibiting assignment or delegation.

Did the Board violate 47 U.S.C. § 251(c) by granting Liberty interconnection rights? No. Puerto Rico Telephone argues that Liberty, formerly a provider exclusively of cable services, cannot be accorded § 251(c) rights.

State boards cannot regulate in areas that Congress has preempted through the Telecommunications Act. See 47 U.S.C. § 253(a); see also Verizon New Eng., Inc., v. Maine Public Utilities Com'n, 509 F.3d 1, 9 (1st Cir. 2007) ("State regulation, even when authorized by local law, must give way not only 'where Congress has legislated comprehensively' in a field with an aim to occupy it, but also 'where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress'" (quoting Louisiana Pub. Serv. Comm'n, 476 U.S. at 368–69)). The Act, however, specifies that state boards retain all regulatory authority not *expressly* preempted by the Act. The First Circuit has held that,

> the structure of the Act demands that the FCC make its intent to foreclose state regulation especially plain …. The requirement of a clear indication of the agency's intent to preempt is especially important in the context of the [Act], which "divide[d] authority among the FCC and the state commissions in an unusual regime of 'cooperative federalism,' with the intended effect of leaving state commissions free, where warranted, to reflect the policy choices made by their states."

Centennial Puerto Rico License Corp. v. Telecommunications Regulatory, 634 F.3d 17, 34 (1st Cir. 2011) (quoting Global NAPs, Inc. v. Massachusetts Dep't of Telecomms. & Energy, 427 F.3d 34, 46 (1st Cir. 2005). Indeed, Congress took pains to preserve traditional state authority over telecommunications services and to maintain a role for states within the dual regulatory regime. For instance, § 252 provides that "nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its

review of an agreement, including requiring compliance with intrastate telecommunications service quality standards or requirements." Id. § 252(e)(3). Section 261 similarly states that the Act does not prevent a state "from imposing requirements on a telecommunications carrier for intrastate services that are necessary to further competition ..., as long as the State's requirements are not inconsistent with" the Act or the FCC's implementing regulations. Id. § 261(c).

Whether the Act or the FCC have preempted state telecommunications regulation thus depends on a determination that a specific requirement is "inconsistent" with federal law; that is, that the state directly has violated a clear statement in the Act or FCC rules, or that the state's chosen means of regulation clearly interfere with a federal policy goal or a method of achieving that goal. See Verizon New Eng., Inc., 509 F.3d at 9; Global NAPs III, 444 F.3d at 72–75.

Neither Section 251 on its face, nor the FCC, specify whether historic cable providers offering voice services, carriers like Liberty, are or are not entitled to interconnection rights. Since the Act does not clearly provide one way or the other, this is part of the regulatory area reserved to the states. The Board did not exceed its authority in requiring the interconnection agreement; therefore, we will not enjoin its order requiring interconnection.

Puerto Rico Telephone argues that the FCC, not a state commission, has the exclusive authority to determine who is entitled to rights under Section 251(c). Because the FCC has not ruled that cable providers offering voice over Internet protocol, such as Liberty, are entitled to rights under Section 251(c), the Board's decision to grant interconnection rights was arbitrary and capricious. To support this contention, Puerto Rico Telephone points to two orders issued by the FCC. One order determined that long distance carriers (known as "interexchange carriers") are telecommunications carriers under the 1996 Act but still could not obtain interconnection for terminating interchange connections. See In the Matter of

Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 11 F.C.C.R. 15499, 15598 (1996). The other order determined wireless providers are telecommunications carriers under the 1996 Act but those carriers still could not obtain unbundled access for the sole purpose of wireless communication. See In the Matter of Unbundled Access to Network Elements, 20 F.C.C.R. 2533, 2552 (2005).

Puerto Rico Telephone interprets these decisions as establishing a clear intent on the part of the FCC both to assert exclusive authority over mobile service interconnection and to prevent states from interfering with its scheme of voluntarily-negotiated, private interconnection agreements involving mobile service carriers. But neither of Puerto Rico Telephone's examples deal with the type of carrier, or the issues, before us now.

Was the Board authorized to resolve issues related to performance intervals and the calculation of performance credits? Yes. Puerto Rico Telephone incorrectly asserts that the Board violated § 252(b)(1) by resolving "performance interval" issues that were not open issues.

Liberty presented several performance-interval issues in its Petition for Arbitration under the heading of Major Issue Two. (Docket No. 25-2.) At the time of the arbitration hearing, sub-issues 2.1-2.12 remained open. (Id. at 24-39.) Puerto Rico Telephone takes issue with the Board's resolution of four of those sub-issues: 2.5, 2.7, 2.8, and 2.10. Those issues were open and proper for the Board's resolution at that time.

Puerto Rico Telephone's challenge further takes issue with the Board's resolution of these open issues because the Board developed its own resolution rather than adopting either of the party's exact proposals. But the Act does not require "baseball-style" arbitration in which the Board may choose only between the proposals the parties have submitted. WorldNet Telecommunications, Inc. v. Telecommunications Regulatory Bd., 707 F. Supp. 2d 163 n.11 (D.P.R. 2009) (the Board may adopt an approach offered by neither party, as

long as it is consistent with federal and state law). Thus, the Board acted within its authority when it adopted a resolution that incorporated aspects of the parties' proposals with additional provisions of its own making. That remains a permissible resolution even if the board raises the standards applicable to the parties higher than what either party has proposed so long as, as here, the heightened standards comply with relevant federal and state law. WorldNet Telecommunications, Inc. v. Puerto Rico Telephone Co., 497 F.3d 1, 12 (1st Cir. 2007); see also Ind. Bell Tel. Co. v. McCarthy, 362 F.3d 378, 391-93 (7th Cir. 2004); 47 U.S.C. §§ 252(e)(3), 261(c). The Board did not act arbitrarily and capriciously when it determined the performance intervals that should apply to PRTC and Liberty.

Did the Board unlawfully require Puerto Rico Telephone to construct new facilities in order to provide Liberty with unbundled network elements? No.

In its Report and Order, the Board held that "requiring PRTC to build facilities for resale, under the same terms and conditions it provides those facilities to its own customers, will increase competition, benefiting consumers." (Docket No. 25-2) That decision, by its own terms, does not require Puerto Rico Telephone to build facilities to be used as unbundled network elements for the benefit of Liberty. If Liberty attempted to interpret the order in that way, Puerto Rico Telephone would have ordinary recourse in the courts based on the Board's arbitration resolution. Instead, the Board's decision only requires Puerto Rico Telephone to build for Liberty according to the same terms it provides its retail customers.

Puerto Rico Telephone's reliance on an Eighth Circuit opinion is not only founded on persuasive, rather than binding, authority, but it is also misplaced. Puerto Rico Telephone relies on Iowa Utilities Board v. FCC, 120 F.3d 753, 813 (8th Cir. 1997), for its contention that § 251(c)(3) "requires unbundled access only to an incumbent LEC's *existing* network— not to a yet unbuilt superior one." But that holding does not address the issue here, which is not whether Puerto Rico Telephone must build facilities for Liberty to use as unbundled

network elements but, rather, whether Puerto Rico Telephone must build facilities for Liberty on the same terms as it does for its own retail customers. In other words, Puerto Rico Telephone is already, or will be, engaged in building these facilities—the only issue the Board resolved is whether Puerto Rico Telephone can continue doing so only for its own customers. It cannot, based on the Board's order, and that holding is not contrary to federal law.

Was the Board's resolution of the IP-to-IP negotiation issue consistent with the FCC's regulation? Yes. PRTC argues that the Board cannot require an alternative dispute resolution provision to resolve negotiations of IP-to-IP interconnection because the Board has been preempted from resolving such disputes.

Puerto Rico Telephone is both factually and legally incorrect. Puerto Rico Telephone's argument is based on its faulty reading of the FCC's Connect America Fund Order. See Connect America Fund, Report and Order and Further Notice of Proposed Rulemaking, 26 F.C.C.R. 17663, 18126 (2011). Puerto Rico Telephone insists that the Connect America Fund Order stands for the proposition that the FCC has established a regulatory framework addressing IP-to-IP interconnection—preempting any Board decision that touches on IP-to-IP interconnection. Puerto Rico Telephone misses the point of the Connect America Fund Order, which, from beginning to end, is dedicated to promoting the expansion of broadband service, including VoIP service, and does not preclude state-level action to encourage that development. Id.

## V.

## Conclusion

For the foregoing reasons, the defendants' summary judgment motion, (Docket Nos. 15, 31), is **GRANTED.** The plaintiff's motion for judgment on the pleadings, (Docket

No. 23) is **DENIED.** Plaintiffs' Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

      **IT IS SO ORDERED.**

      San Juan, Puerto Rico, this 31st day of March, 2014.

                                              S/José Antonio Fusté
                                              JOSE ANTONIO FUSTE
                                              U. S. DISTRICT JUDGE